O

# United States District Court
# Central District of California

| | |
|---|---|
| CARLINI ENTERPRISES, INC. dba CARLINI DESIGNS and ANTHONY J. CARLINI, | Case No. 8:13-cv-01671-ODW(RNBx) |
| Plaintiffs/Counter-Defendants, | **CLAIM CONSTRUCTION ORDER** |
| v. | |
| PAUL YAFFE DESIGN, INC. and PAUL YAFFE, | |
| Defendants/Counterclaimants. | |

## I.    INTRODUCTION

In this design-patent action, the Court concerns itself with the design of motorcycle handlebars marketed by Plaintiffs Carlini Enterprises, Inc. and Anthony J. Carlini (collectively, "Carlini") as "Evil Apes" and "Gangster Apes."  Carlini alleges that Defendants Paul Yaffe Design, Inc. and Paul Yaffe (collectively, "Yaffe") have infringed two design patents by marketing their "Gentle Curve OEM Monkey Bars Custom."  As a first step in determining patent infringement, the Court must construe the essential terms of the patents.  After considering the parties' briefs outlining their competing constructions, the Court finds oral argument unnecessary and construes the asserted claims as set forth below.  Fed. R. Civ. P. 78; L.R. 7-15.

## II.   FACTUAL BACKGROUND

Carlini initiated this action on October 24, 2013, asserting two claims for design-patent infringement against Yaffe.  (ECF No. 1.)  The patents-in-suit are U.S. Design Patent No. D629,343 (the '343 Patent) and U.S. Design Patent No. D604,212 (the '212 Patent).  Carlini alleges that Yaffe's "Gentle Curve OEM Monkey Bars Custom" infringe both patents.  In responding to the Complaint, Yaffe has filed several counterclaims for declaratory judgment of non-infringement, patent invalidity, declaration of unenforceability, false marketing of the patents, and false advertising. (ECF No. 27.)

The '343 Patent was issued on December 21, 2010.  (*See* Carlini Br. Ex. 38.)  It is a divisional patent of U.S. Design Patent No. D621,755.  Carlini markets the handlebars depicted in the '343 Patent as "Evil Apes."



'343 Patent

/ / /

1    The '212 Patent was issued on May 8, 2007, and is a continuation in part of

2  U.S. Design Patent No. D542,197.  (*See* Carlini Br. Ex. 42.)  Carlini markets the

3  handlebars depicted in the '212 Patent as "Gangster Apes."



'212 Patent

### III.    LEGAL STANDARD

18    Even in design-patent cases, the Court has a duty to conduct claim construction.

19  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).

20  But because design patents are typically claimed in visual form, claim construction

21  should be flexible and not necessarily include a detailed verbal description of the

22  claimed design.  *Id.*

23    In some instances, the claim construction should distinguish the ornamental

24  features of the patented design from functional aspects of the design.  *Richardson v.*

25  *Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).  Yet, the task of

26  distinguishing the ornamental features from the functional ones must be tempered—a

27  detailed verbal description of the claimed design may place an undue emphasis on

28  particular features of the design and may hinder examination of the design as a whole.

1    *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).  To properly construe the

2    claims, the Court must consider intrinsic evidence (the patent specifications and

3    prosecution history) and extrinsic evidence (e.g., expert testimony and references to

4    contemporaneous dictionaries).  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.

5    Cir. 2005).

6                          **IV.   DISCUSSION**

7            The patents-in-suit do not have detailed specifications, which is typical for

8    design patents.  *See* Manual of Patent and Examining Procedure ("MPEP") § 1503.01

9    (design-patent specification).  The specifications of the patents-in-suit include only a

10   preamble, cross-references to related applications, descriptions of the drawing figures,

11   and a single claim.  (*See* Carlini Br. Exs. 38, 40.)  In addition, the patents-in-suit do

12   not disclaim any features by way of broken lines.  Thus, the designs shown in the

13   figures make up the entirety of the claimed designs of the patents.  *See* MPEP

14   § 1503.02 (design-patent drawing).  Neither Carlini nor Yaffe place any emphasis on

15   the prosecution histories of the '343 and '212 Patents.  But Carlini has submitted

16   extrinsic evidence in the form of prior art and declarations, largely to discount Yaffe's

17   proposed claim constructions.

18           Carlini suggests that verbal construction of the claims in both patents is

19   unnecessary, and the Court should construe the claims as "motorcycle handlebars of a

20   certain design as shown in Figures 1 to 7 of the '343 Patent" and "motorcycle

21   handlebars of a certain design as shown in Figures 1 to 8 of the '212 Patent." (Carlini

22   Br. 6:25–8:5; Reply 1:9–12.)  But Yaffe seeks more detail.  Yaffe first asks the Court

23   to find that the claimed designs are largely—if not entirely—functional.   (Yaffe

24   Br. 14–16.)  Alternatively, Yaffe proposes verbal constructions of both the ornamental

25   and functional features of the designs.  (ECF No. 28, Ex. A.)  Should the Court find

26   verbal construction necessary, Carlini also puts forth proposed constructions.  (*Id.*)

27           The Court agrees with Yaffe that in some instances, ornamental features should

28   be distinguished from functional ones in claim construction.  *See Richardson*, 597

F.3d at 1293.  But this is not one of those instances.  The most important task is to facilitate examination of the design as a whole—ornamental and functional elements together.  *Crocs*, 598 F.3d at 1303.  It would be difficult for this Court to verbalize the design of the handlebars depicted in the patents-in-suit and separate the ornamental features from the functional ones.  At the very least, a detailed verbal description would place undue emphasis on particular features of the claimed design.  *Id.*

Despite Yaffe's arguments to the contrary, the Court finds that there are essentially no features of the handlebar designs that are purely utilitarian.  *See Richardson*, 597 F.3d at 1293–94 ("If the patented design is primarily functional rather than ornamental, the patent is invalid.  However, when the design also contains ornamental aspects, it is entitled to a design patent . . . ."); *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("Although the design patent is directed to the ornamental aspect of a useful article, that the design of a particular article is related to the article's use may not defeat patentability.").

Each of the handlebars' features has ornamental and functional aspects.  For instance, the handlebars have three parts, which Carlini refers to as the "grips," "uprights," and "center section."  (Beyer Decl. ¶ 4.)  There is really no dispute that these parts provide some function.  A rider must have something to hold onto—the grips—and there must be some point where the handlebar attaches to the motorcycle—the center section.  The function of the uprights is to connect the grips to the center section.  But as evident by the numerous designs available in the motorcycle handlebar market, there is significant flexibility as to the shape, angles, and size of the handlebars as well as the attachment method.  (*See e.g.*, Carlini Exs. 30–31.)  Some have sharp angles and rise up perpendicular to the motorcycle, while others are curved or sit horizontally above the bike.  "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (holding that there were other ways of

designing athletic shoes to perform the functions of the elements of the patent-in-suit). The Court is unpersuaded by Yaffe's argument that the designs are largely or entirely functional.

In addition, the Court finds that the proposed verbal constructions submitted by both parties are more cumbersome than beneficial to the trier of fact. For example, Yaffe asks the Court to incorporate certain measurements and dimensions into claim construction. (Yaffe Br. 18:17–22:9.) But not only are these measurements and dimensions not explicitly contained within the patent, it is also unclear to the Court how Yaffe came up with the specific numbers. There is no declaration explaining the calculations and Yaffe submitted no evidence in support of claim construction.[1] The Court is not willing to so narrowly construe the patents-in-suit absent intrinsic evidence supporting the specific measurements and dimensions proposed by Yaffe. Yaffe's arguments regarding the measurements and dimensions of the handlebars are more appropriate for the infringement inquiry—not claim construction. *See Egyptian Goddess*, 543 F.3d at 678–79 (explaining the "ordinary observer" test for infringement in design-patent cases); *see also Sofpool LLC v. Kmart Corp.*, No. CIV S-10-333 LLK/JFM, 2013 WL 2384331, at *4 (E.D. Cal. May 30, 2013) (discussing the proportions of a design patent for an above-ground pool at summary judgment on infringement, but specific proportions were not included in claim construction).

Based on the admonishment by the Federal Circuit in *Egyptian Goddess*, the Court finds it appropriate to defer to the figures in the design patents-in-suit for claim construction. *Id.* at 679–80.

/ / /

/ / /

---

[1] In the Joint Claim Construction and Prehearing Statement, Yaffe refers to anticipated evidence in its proposed constructions. (ECF No. 28, Ex. A.) But that evidence was never submitted by Yaffe in its claim-construction brief. Yaffe merely refers to Carlini's expert declaration and supporting exhibits, none of which support the method of calculating the handlebar measurements or their inclusion in the patents-in-suit.

## V.   CONCLUSION

For the reasons discussed above, the Court construes the claims as follows:

1.     '343 Patent—"The ornamental design for motorcycle handlebars, as shown in Figures 1–7."

2.     '212 Patent—"The ornamental design for motorcycle handlebars, as shown in Figures 1–8."

These constructions identify the ornamental aspects of the patented designs without drawing undue attention to individual functional features.  By including the phrase "motorcycle handlebars," the trier of fact may focus on comparing the overall ornamental look of the patent designs with that of the Accused Product and prior art.

**IT IS SO ORDERED.**

August 15, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**